Pacific Shipping. Mr. Simms. Your Honors, we'll begin this morning with a quotation from a Supreme Court case called Murphy Brothers v. Machete Pipe, which is, the quote is at 526 U.S. 344-350. And the court writes, Service of process under longstanding tradition in our system of justice is fundamental to any procedural imposition on a named defendant. The quote continues on, In the absence of service by the defendant, a court ordinarily may not exercise power over a party the complaint names as a defendant. And so we're about a couple of weeks past the court's Douglas NYK decision, and so this case I'm thinking is a bit in the wake of that, or at least in the water of it. The court did make some mention of comedy, and what we'd like to focus the court on is that Murphy quote. Also this court's similar quote in Aetna Business Credit, which is 635 Fed Second 434-435. Both of these quoted in our opening brief at page 52. And refer the court to the timeline that we have at page, I think it's page 22 of our opening brief. And this is, let's see, page 22, the chronology. But we follow the chronology here, we see the problem with the injunction and comedy. So the suit was issued to the Aetna District October 12, 2018. And then there was an attempt to serve process on a master of a ship managed by our client Eastern Pacific. Eastern Pacific doesn't own ships, it doesn't employ people, it manages ships, kind of like yellow cabin taxis. And so that attempt to serve a captain was ultimately unsuccessful. EPS, Eastern Pacific, moved under 12B5, and there was a whole bunch of discovery during that year about whether this captain was the agent and all of that. And the district court ultimately, on January 7, 2020, granted EPS 12B5 motion. And said, okay, well, you can try another way to serve. And so what did the plaintiff choose? The plaintiff chose to serve through the Hague Convention with a letter rogatory asking the district court for that letter, and the district court issued the letter, and the letter went through the process. So, by this time, the Singapore-based client, with an Indian plaintiff, with an injury that took place in Gabon, is looking at this and saying, this makes no sense. The man does not live in New Orleans, he's never been to New Orleans. The ship didn't come to New Orleans. So EPS brought suit in the plaintiff's hometown, home place. Did EPS contest the jurisdiction here in New Orleans? I mean, how did we get here? We got here under, pre-Douglas, 4K2. And, of course, this is vivid in, I'm sure, your Honor's consciousness of this. So the big fight in Douglas was whether there was general jurisdiction under 12K2. And so throughout 2019, we were rolling into discovery where the district court was ordering EPS to turn over absolutely every record of every ship that had ever come into the United States. Is that common? Is it common? Yeah, before Douglas? We'd never seen it before, but before Douglas, when you looked at 12K2, you could say, yeah, maybe. But there would have been specific jurisdiction in a bunch of those cases. Well, so we looked at this and we said, there is an allegation that there wasn't enough antimalarial medication on the ship when it pulled through Savannah. Allegation of specific jurisdiction. We'll fight this case somewhere else. Basically on service, because service had not been made. And, of course, there are plenty of instances where there's potentially personal jurisdiction in the United States where cases can be brought elsewhere, including where there's a private, there's a plaintiff that's resident elsewhere. But has the jurisdictional question, other than service of process, was that litigated? It was not litigated. It was not litigated. EPS never has, has not raised that in the Eastern District of Louisiana. There is, Your Honor, there is a question of personal jurisdiction. Pre-Douglas, the discovery was focusing on general jurisdiction. The client looked at it and said, there's specific jurisdiction. We're just going to go ahead and waive personal jurisdiction, because it's either one or the other, pre-Douglas. Now the question is, factually, can they prove specific jurisdiction? That is, that there was a fault at Savannah. So far, this is not, well, it is a little bit in the record here. EPS is a personnel service, is it not? EPS is a manager, and so... What does manager mean? Does it hire the captain and the crew? So you own a ship, and you come to EPS, and we'd say, you'd like, we'd like you to take care of the crew on our behalf through a crewing company, and so there was, you'll see in the briefs, that there was a crewing special, there was an employer that was separate called Ventnor, and we'd like to, we'd like you to provision the ship, and all of these expenses go back to the ship owner. Okay? So we're, like, another example is a property manager, for example. You own an apartment, you need it cleaned, that's what we're... I understood that you hired Gunpot, the seaman. I did not understand that you handled the crew, the master, you know, the captain, and all the rest of the incidentals. Yes. EPS, through manning agencies and other separate employers, works with those to hire the seaman. Just, again, if you use the apartment example, same thing. Okay, so you basically were conceding personal jurisdiction, and it was only an issue of service, which had not been made at the time that you filed suit in India. Yes, Your Honor. Now, where did the district, I mean, I think, unless my colleagues feel differently, I think we understand the facts and the, and the, and the timeline, and you could waste an awful lot of time in that. Where did the district court abuse your discretion? The district court not only abused his discretion, but it is, the review that the court should apply is a de novo review, and here's why. In the, the M.W. case, and in, in CAPA and in CAIPA, I don't know whether those other two are both K.K. cases, but at any rate, each time the, the court says, you, you have to go through a standard injunction analysis, which is, is there a substantial likelihood of success, the court's very familiar with this, we just talked about injunctions, a substantial threat of irreparable harm, if not granted, a threatened injury outweighs the potential harm, and an injunction undermines the public interest. Now, the, the timeline in this is that we have a case going on in Goa, the hometown of the, the home place of the plaintiff. It is, it is a case that's not exactly the one that was later put at issue here by service, much later, a year and a half later. It's a case on a declaratory judgment on what does his employment agreements mean, okay? But here's, the, the point of this is, did that case irreparably harm him, okay? Is, is there, first off, we know, and, and it's in the record, so, so here we are at argument, and, and, and we say, well, Your Honor, we want, we'd like you to consider that the, the standard injunction factors, and the, and the court's response was, no, I don't have to do that. This is special. No, it isn't. It's an injunction. There's, there's no exemption in any of this court's decisions. How do you square that with our case law, allowing this, these injunctions without doing a reparable injury analysis? The case law does. In each, in each of those three cases, Your Honor, in the MWA, and the CAPA, and the CIEPA, say, to find, to enter an injunction, you have to go through those four factors. They don't say, oh, forget about the four factors, because we're going to look at something else. They, they don't say that. They, they, that's, that's what it says. And, and so, but the court just... Where in CAPA do you see this? Excuse me, Your Honor? Where in, you're, you're relying on CAPA? Sure. I'm sure you know that our earlier cases did not talk about this at all. So you're saying that the law sort of evolved by the time of CAPA. I'd like to know where in CAPA you're referring to. I've got the, the most recent one, which is MWK Recruiting. And so this is at page 562. And the court writes, generally, to obtain a preliminary injunction, a movement must demonstrate those factors we just went over. Okay? Then, stepping down here, the, the court says a foreign anti-suit injunction is a special application of these injunction rules. These. And, and it doesn't, so the court is not saying, forget about the injunction rules. The court is just saying, layer along with those the other, the other things to consider. Which and, and, and the punctuation in MWK, by the way, is that only when a movement, movement clearly has carried the burden of persuasion on all requirements, that talking about those four, plus the others, are they entitled to a injunction? I assume you will acknowledge that that was the, the, the irreparable injury in the standard four factors are not discussed in our earlier case law? They. So in other words, your theory is that the law changed, I take it, by the time of NKW? Is that, I'm sorry, NWK? Your Honor, they are, they are not, they, they are, they are, so for example, if you look at the Corrada-Botas case, which is the one right before MWK, 335, F2nd, 357, and 363, has the same factors, right there. And then the court writes, preliminary injunction should only be granted if all four requirements are met. Okay. Now, was, was, did the, did the courts below find all those four requirements met? I guess, because the court, this court didn't consider it to be a, a, a, a, a consideration, but, but. But is your argument, counsel, that maybe vexatious or oppressive litigation is irreparable harm? I mean, are you trying to equate what we talk about in those cases, for anti-suit injunctions, with one or more of the four factors that are more traditionally viewed for other injunctions? Well, the, the vexatiousness is, is something that's mentioned specific, it, it, it, it. It's not mentioned, it's the basis for the, some of those decisions. It is, it, it is a, yes, your Honor, it's an overlay to a situation where there's going to be a foreign anti-suit injunction. And vexatious or oppressive is, so the, the four factors, the court brings up, will the, the foreign suit frustrate a policy of the forum issuing the injunction. Okay. Now, how in the world does the, does... What law govern, what law governs the articles of seaman's status? Liberian law, your Honor. And what, don't those article, what, what possible justification is there for a Jones Act claim here? Zero. We've argued that, that's before the district court, and... That's their only hook for, for cause of action based on U.S. law, right? They've also alleged unseaworthiness, that the ship was unseaworthiness leaving out of the, and the question of Jones Act is up before the district court, if no Jones Act, no jury. And the question of seaworthiness, that we've taken discovery on that, and there's no evidence of that either, but not, not here on the record. But, but, so... Does the dollar limitation on damages in the articles of seamanship, or whatever you call them, would that ordinarily be controlling over this man's injuries? That plus the fact that the... It is according to the law that the court is ready to apply in India, yes. That's the declaratory judgment. And, and the, the, it's fundamental that a court has the right to exercise jurisdiction over its own citizens, which this court, which the court in India has done. So when we're talking about foreign injunctions, frustrated policy, the forum issuing the injunction, policy of the forum issuing the injunction is that a court has jurisdiction over its own citizens. Here this, this plaintiff waited, proceeded in contempt of his own court, managed to slip under the line, so there was, was service of process, and then had the district court collaterally attack and basically overrule his own court at home. Now he has a lawyer in India, right? He sure does. He has a very good one. Okay. You have time for rebuttal. Mr. Martin, I, without interfering with your argument, have you ever heard of a case of Chick-Cam-Chu? I have, Your Honor, but you can't call us back immediately. Come on. Yes, I've certainly heard of that case. Well, I advise both counsel to take a look at it because I had the hapless, well, I was on the panel in that case, and we got reversed unanimously by the Supreme Court, and it had to do with a Seaman case where the federal court had dismissed on forum nonconvenience, the plaintiff brought another action in state court, and the federal court enjoined that, and then the Supreme Court vacated and remanded not to dismiss the injunction, but for the district court to reconsider. I seem to recall that I read it once in connection with a forum nonconvenience issue. A long time ago. Yes, ma'am. Perhaps this is portentous, but I want to begin with the observation I've never noticed before today that the globe lamps were held up by brass rattlesnakes in this courtroom. Perhaps it's auspicious, I don't know. I'm Richard Martin. I have the privilege of representing Cole Carr Ganpat. Thank you for your time that you're going to afford me to argue on his behalf today. There are a number of things which first need to be cleared up. Judge Morgan specifically excluded a Rule 4K2 analysis. I had a big case with her a couple of years back, and 4K2 was a featured argument, the O'Berry case, but not this time. She didn't go near 4K2 and wouldn't allow me to do it, although I think it would certainly apply in this case. The contract that we've talked about, the Seafarers Employment Agreement, was only between Ventnor Navigation, which if you go online, you find they've got the same address as EPS in Singapore, the vessel under Larchap, same thing. There's an in-house play going on here. At any rate, the Liberian law that was mentioned applies only between Mr. Cole Carr and Ventnor, and the Seafarers Employment Agreement also, I forget the number of the paragraph, but benefits for injuries, Mr. Cole Carr is free to pursue any and all other remedies. If EPS India and EPS Singapore are not parties to this agreement, they're third parties. He can file a lawsuit against them. I mean, that is comp law everywhere. How many cases do we have about the Jones Act that involved every single contact being in Savannah or wherever? Well, the O'Berry case was one where the plaintiff was hired by a Texas company, transferred to a Cayman Island company, who then sent him to Saudi Arabia, to the Gulf there, where he's employed by yet another company in the family, had to do a four-year helicopter safety evacuation training, and was injured in a pool in Dharan, Saudi Arabia. Judge Morgan upheld jurisdiction here, so 4K2. You have a citation to that case? It's O'Berry v. ENSCO. Is that a district or a circuit court case? It's a district court case. Okay. Well, that's Judge Morgan's view. I mean, it just seems to me, and I've seen a lot of semen injury cases over the years, and there's nothing to connect this one to the United States except for one docking. Well, it's, Your Honor, when you look at what happened during that one docking, there was a realization on the part of the ship's hierarchy that they did not have the proper medicines aboard that vessel to go to Gabon, which harbors the worst type of malaria. Well, that could have happened if they had docked in Caracas. It could have happened if they docked in Rio de Janeiro. If that's on the water, I'm not sure. Well, Your Honor, except— Anywhere in the world. Well, except in this case, they had arrangements with U.S. medicinal suppliers to bring the medicines aboard, and they— That just proves that there's evidence in the U.S. That does not prove that the connection of the plaintiff to the U.S. had anything to do with anything. I mean, if you had had a fire aboard ship and it had been bunkered in Atlanta, would you be suing in Atlanta? Well, probably. Well, Your Honor, we believe that this is enough connection to support this— I know you believe it. I am very dubious that this injunction should be sustained. Well, Your Honor, this injunction was one that was brought by companies. I don't know what their standing was to go to court in India. EPS India is not a part of the contract. Their whole job was simply because there's a relationship between all these parties, a form of eumonosis, if you wish, to get the plaintiff to sign a contract with Ventnor. There's nothing in the contract which obligates EPS India or EPS Singapore to do anything. How did he get an American lawyer? He hired a colleague of mine in Miami. I do not know the circumstances. I do know that he was in the hospital in Brazil for 75 days, had been in a coma, had plasmodium false apparel, which is— I'm not doubting that he was very ill, but what I'm— I wish I knew the direct circumstances. I do not. He must have seen an ad while he was hospitalized in Brazil. Well, Your Honor, I don't know if Florida trial lawyers advertise down there or not, but I don't know the answer to that one. But getting back to what's going on, Judge Morgan is a very thorough judge, and she writes very, very detailed opinions. She did not commit reversible error because she followed this court's law directly in coming to her opinions. And the Fifth Circuit has said that foreign litigations can be enjoined under any of the following circumstances, and there are four circumstances, and one of which is if the found was that there were—the litigation in India ran afoul of all three of this court's factors for granting an injunction, inequitable hardship, the ability to frustrate and delay the speedy and efficient determination of the cause. When the plaintiff's counsel can't even make service for nearly two years, that infused with this speedy and efficient resolution? Well, let me discuss that, Your Honor. When we started attempting to make service, I first asked the defendant, will you waive service? They said, no, we're offshore. You've got to service offshore. So Judge Morgan did not grant their 12b-5 motion. The plaintiff didn't even testify in person here, right? He was in India. He testified by Zoom link. He testified under direct control of the court. So would he come back to New Orleans for trial? Is that what you're suggesting? You're going to pay for him to fly from India to New Orleans for trial? That's what we would do. Has he ever been in the U.S.? Yes. Other than when he docked? I don't know the answer to that one. He's been on a number of EPS ships. He might have. I don't know. But getting back to where I was a minute ago. Pardon me. I'm sorry. I lost my train of thought, Your Honor. 12b-5. The judge did something about 12b-5. Her Honor decided instead that we were going to be given the opportunity to serve overseas. In his very first pleading in January of 2019, EPS said you've got to service pursuant to the Hague Convention. So we said fine. We identified a professional process serving company, got our ducks in a row, got our materials to the State Department. And then COVID hit. And we kept getting answers back from the service company. We don't know what the State Department is doing. I tried calling them on the phone. Could never get an answer. We got extensions of time in which to serve. They were uncontested. EPS graciously consented. And in April of 2020, we were able to get them served. Then there was a challenge to that service, as there's been a challenge to everything else in this case. And a couple months later, Judge Morgan upheld that service. So we were not resting on our laurels at all trying to get service done. What I suspect is that this lawsuit in India was a reaction to Judge Morgan saying no, I'm not going to dismiss this lawsuit. Go ahead and serve it. That's what I would suggest happened. Now, Judge Morgan conducted a very thorough hearing, briefed the issues thoroughly, followed Fifth Circuit law to the letter, and came to the conclusion that pursuit of the case in India would result in inconsistent rulings, that the cases were based on the same factual and legal theories. In fact, their latest pleading in the Indian court confesses the pleadings are the same. In pleadings to the district court, EPS has told the court, okay, here's what they said, and this is on record on appeal 2021 at paragraph 30, quote, this is from them, the pendency of the U.S. proceedings, the proceedings before this honorable court in India, on the same cause of action would undoubtedly be multiplicity of pleadings. Now, that's their way over there, I guess, of saying they're the same thing. And that was one of the factors that Judge Morgan relied upon in coming to her conclusion. International comedy, I don't know if the court is interested in me addressing that issue. I don't think it's the main issue. I think the Fifth Circuit spoke to it. I think comedy is very important. Had there been a motion for forum nonconvenience, it seems to me it should have definitely been granted. Well, there was a motion for forum nonconvenience in this case, and there was a motion for choice of law. And the motion for forum nonconvenience was denied. EPS asked the court to certify it. Judge Morgan said no. Then there was a mandamus petition with this court on that very issue, which was denied. So, Your Honor, the forum nonconvenience issue has been before this court, and when you look at the pleadings that are here today, it's a thinly veneered forum nonconvenience motion is what it is. No, it's . . . I mean, you know, it is rather troubling that the idea of granting an injunction against a foreign court proceeding is somehow easier to obtain than an injunction in this country. Now, I well understand what Fifth Circuit law has provided in the past, but there didn't seem to me to be in any of these cases circumstances that had no real connection with the U.S. other than a foreign seaman was trying to take advantage of the much more favorable American tort law. Your Honor, one could say . . . None of the . . . I mean, based on those other cases . . . Your Honor, one could say the same thing about what's going on in India. The only connection there is this man lives there. But that's a big connection, isn't it? Well, it's . . . I'm not trying to say that the residence of a party to a litigation is not a factor, but when you look at . . . My goodness, that's how you determine venue, like across this country. Well, but what right do the other parties . . . EPS India has no connection whatsoever by contract or through a lawsuit here, and yet it's suing him there. I'm sorry. Well, I was looking back at Judge Morgan's order, and she doesn't say anything about . . . She just says that the lawsuits totally overlap in all regards in India. She doesn't say anything about Ventnor versus EPS, if I'm not mistaken. Your Honor, the argument . . . Which you're relying on now. I think what Judge Morgan saw was that there were enough facts before the court that she had to go . . . did not need to go into other issues, such as the question being posed right now. She saw enough. She didn't have to determine the weight of the factors. I mean, this guy got thrown in jail in those proceedings. Maybe she saw something I didn't, but I still don't see how we're in the Eastern District of Louisiana. Well, the Jones Act has flexible jurisdictional provisions, and this is one of those deals where a defendant has the right to bring any motion. It chooses at the Rule 12 stage, and all we got was one for insufficiency of service. And then when some discovery answers were due about what it was doing here in the local area, which would solidify jurisdiction, it suddenly conceded to personal jurisdiction and venue. I've never been in a case where that's been done. But Tate said, we're here. We like it here. And then, of course, they brought their form nonconvenience motion. I mean, I argued they can't do it, but Judge Morgan corrected me and said no. They can still bring that motion, but they lost that one too, and they lost a choice of law motion, and they lost certifying the form nonconvenience question. And this is just the latest step. We have been trying to get this case to trial for years. Your Honor, would you like me to address Comity? Which? Would you like me to address the Comity issue? Sure. Yes, please. The law in this circuit is that in determining whether a foreign anti-suit injunction is necessary, the court weighs the need to prevent vexatious or oppressive litigation and to protect the court's jurisdiction against the need to defer to principles of international comity. And that's this court's Karaha-Bodas case, 335 Fed 2nd at 366. That was the law that Judge Morgan specifically applied and cited in her order and reasons. Judge Morgan also said this court has adopted or approached anti-suit injunctions, which, and this is a quote of the Fifth Circuit, this is not Judge Morgan, emphasizes the need to prevent foreign or vexatious litigation and rejects the approach employed by some other circuits, which emphasizes principles of comity over other considerations. And that is why Judge, and that's the CAPA Inc. case, 76 Fed 3rd at 627. That's why Judge Morgan in her analysis ended up saying that the primary focus of her decision to grant the injunction was vexatious and oppressive litigation, which threatened her rulings. She ended up saying this is a private dispute between private parties. No public international issues are implicated. She said this lawsuit has been pending in the United States for almost three and a half years and is now firmly ensconced within the confines of the U.S. judicial system. But two of those years had to do with service of process. Your Honor, we were not simply waiting for things to happen. This case has over 330 entries on the docket sheet. I have never seen more motions and more practice in any district court case in my 40-year career. I mean, there are other people who may have different looks at this thing, but I've been constantly busy litigating this case. How much discovery on the merits has occurred? We have just finished discovery on the merits. We are in the process of taking expert depositions this week. We're set to go to trial November 14th. So we are busy doing that. There are three or four expert depositions set for this week. So, no, we have not stopped. We've been proceeding to trial. And then there's one last issue lurking out there, and I don't really, I think I know the answer to it, but I'm not sure, and that is whether or not they had notice of this lawsuit on Singapore Day, December 16th, 2018, when the captain of the vessel sent a copy of the lawsuit by email to Captain N.L. Singh, who's their fleet director, their fleet captain. They also claim that through private record searches, they were already aware of the suit before they were served. Within two weeks, they got a motion to dismiss being filed. So they knew, and the three-year clock on an Indian suit started running. Now, why is that important? I'm not suggesting they waited more than three years. They didn't. They waited two years, or maybe it was 32 months. But they've dismissed their lawsuit. Judge Morgan said your lawsuit is dismissed, and that has happened in India. Now, I certainly guess they wanted a dismissal without prejudice. That's what I would have tried. But when you move to dismiss a case without prejudice, and more than three years is run on the statute, you have a statute of limitations problem. I don't know that there is going to be a case to go back to over there, and I've cited the Indian statute to the court in my brief. You dismiss a lawsuit, it's like prescription has never been interrupted. That's what we have here. So all this big fight that my worthy opponent and I have had next door and here may all be for naught. That's something to be considered. So are there any other questions? Nope. Thank you. Thank you for hearing me, Your Honor. Yes, sir. Pleasure to appear before the court. Your Honor, that is all up to the Indian court. What is up to the Indian court? Whether there's a statute of limitations running, what the Indian court decides to do in response. Has that case been dismissed? In India, if you note a dismissal, it is with prejudice. If you move for dismissal, it is without prejudice. That's before the court now. This is in our briefs, some home cooking that happened. I won't go into it, but it's before the court whether it's without prejudice dismissal. If it's dismissed, does that impact whether there even needs to be an anti-suit injunction here? Yes, because without prejudice, EPS India has the right to bring it again. But here's the difference. We paid attention to the court's injunction. We obeyed the injunction. The plaintiff did not obey his own injunction. What the plaintiff is asking the court to countenance here is a contempt of his own home court. EPS, not their own home court, listened to Judge Morgan. She said dismiss immediately. We did without prejudice. She didn't say dismiss with prejudice. She said dismiss without prejudice. We are following what Judge Morgan wanted to do. We asked, by the way, this court to stay that. This court decided not to do that. So the difference is stark as far as compliance here with court's orders. And a case that is worth looking at, it's in the briefing, is the McPhail Ocean Engineering case, 302 Fed 2nd, 274. And so Mr. McPhail was hurt badly. He was a diver. He was poisoned. And he brought a claim in Australia that was approved by the Western Australia Court by way of judgment. He came to the U.S. for treatment. He brought a case here in the Western Southern District of Texas. And the judge there, I forget the guy's name, famous, very famous, flamboyant. Lucius Funton? No. Western District? Yes, Southern District, Galveston. Oh, Galveston. Well, Sam Kent. Sam Kent said, no, you can bring a case here despite that, and I'm issuing an anti-suit injunction. That came up to this court, and this court said, look, here's what we're going to do. We're going to defer to the court in Western Australia. If the court in Western Australia holds that this is a judgment, then we're done. If the court in Western Australia says it's not, it's voidable, then we're back here. And that's what should have happened here. What should have happened here is, by the way, there have been 12 hearings before the court in Goa. Twelve. How many here? Oh, by the way, the plaintiff was there personally at every single one. And so 12 hearings. If the plaintiff had not been dragging his feet in his own home court, then that case would have been quite advanced by now. But, so there's no delay. Frustrating policy of the forum. Okay, this forum is certainly not going to override the judgments of courts that come prior, injunctions over people who are subject to their own jurisdiction. How is that vexatious or oppressive? It's 45 minutes from your own house. You've been there 11 times. Let me ask, is it correct that Judge Morgan's decision did not turn on a corporate relationship between EPS and Ventnor? Correct. She didn't seem to mention that. Not at all. Not at all. And the plaintiff just testified, this is in the record, that his employment contract with Ventnor is the one that he thinks is with EPS. And it makes sense because he wouldn't be on the ship if he hadn't signed that contract. And he wouldn't be paid. So there's nothing vexatious or oppressive about the Indian suit. The threat to existing in rem jurisdiction. Well, there was no jurisdiction of the court when the injunction was issued to India. There was no service of process. And here's the thing on service of process. It didn't have to be Hague Convention. It didn't have to be service on a master. It was what the plaintiff finally found out that they could do months before, years before, which is to serve personally in Singapore. And we've had a number of cases in Singapore where the plaintiff has served our defendant personally, and we go ahead. You can look at them. They're on CMECF, on the Southern District of New York. The plaintiff decided to do it a different way. Fine. That's their choice. But the consequence is that there was a properly issued injunction in GOA that should have been followed. All right, sir. Thank you very much. We have your argument. We will be in recess until 9 o'clock tomorrow morning.